UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Aya Raouf

   v.          Civil No. 23-cv-302-LM
             Opinion No. 2023 DNH 042 P

U.S. Department of State, et al.

# **O R D E R**

Plaintiff Aya Raouf brings this action to compel the defendants (the U.S. Department of State; the U.S. Embassy in Abu Dhabi; the Secretary of State; and the United States Ambassador to the United Arab Emirates) to issue a final adjudication with respect to her spouse's visa application. She alleges that defendants' failure to issue a timely, final decision as to whether to grant or deny her spouse a visa violates the Administrative Procedure Act ("APA") and her due process rights. Presently before the court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. no. 10). Defendants argue that Raouf lacks standing to pursue relief against the Secretary of State, that the doctrine of consular nonreviewability bars her claims, that she fails to state an APA claim, and that she fails to state a due process claim. For the following reasons, the court grants the motion with respect to Raouf's due process claim, but otherwise denies it.

## STANDARD OF REVIEW

The court's first task is to discern the appropriate standard of review. Although defendants purport to bring their motion under Rule 12(b)(6), two of the grounds upon which they seek dismissal at least arguably should be evaluated under Rule 12(b)(1).

Defendants' first argument is that the Secretary of State must be dismissed because he lacks authority to grant Raouf the relief she seeks. While the precise legal basis upon which defendants ground this argument is somewhat unclear, the argument is best understood as challenging Raouf's standing. See In re Fin. Oversight & Mgmt. Bd. for P.R., 995 F.3d 18, 21-22 (1st Cir. 2021) (explaining that, to demonstrate Article III standing, plaintiff must establish that a favorable resolution would likely redress the complained-of injury); Sierra Club, Inc. v. Granite Shore Power LLC, Civ. No. 19-cv-216-JL, 2019 WL 8407255, at *4 (D.N.H. Sept. 13, 2019) (stating that plaintiff must demonstrate standing "with respect to each defendant"). Standing is an issue of subject-matter jurisdiction, and motions to dismiss for lack of subject-matter jurisdiction are governed by Rule 12(b)(1). See Freeman v. City of Keene, 561 F. Supp. 3d 22, 25 n.1 (D.N.H. 2021). Therefore, the court will analyze defendants' argument for dismissal of the Secretary of State under Rule 12(b)(1).

In addition, there is some authority within the First Circuit for the proposition that consular nonreviewability—the second basis upon which defendants seek dismissal—is an issue of subject-matter jurisdiction. See Chiang v. Skeirik, 582 F.3d 238, 242 (1st Cir. 2009) ("Under the doctrine of consular

nonreviewability, in immigration disputes nonconstitutional issues are generally outside the jurisdiction of the courts."); Adams v. Baker, 909 F.2d 643, 649 (1st Cir. 1990) ("[I]n the absence of statutory authorization or mandate from Congress, factual determinations made by consular officers in the visa issuance process are . . . not reviewable by courts.").[1] Although defendants do not argue that the doctrine of consular nonreviewability deprives the court of jurisdiction, the court considers whether the doctrine is jurisdictional in nature in order to satisfy itself of its power to proceed. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception." (quotation omitted); One & Ken Valley Hous. Grp. v. Me. State Hous. Auth., 716 F.3d 218, 224 (1st Cir. 2013).

The consular nonreviewability doctrine provides that, as a general matter, courts may not review a decision to exclude a particular alien. See Chiang, 582 F.3d at 242; United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 543 (1950) (explaining that courts cannot "review the determination of the political branch of

---

[1] Whether consular nonreviewability is an issue of subject-matter jurisdiction, however, was not before the First Circuit in these cases. It may be appropriate to consider the First Circuit's statements in Chiang and Adams as dicta with respect to this issue. See Díaz-Rodríguez v. Pep Boys Corp., 410 F.3d 56, 60 (1st Cir. 2005) (noting that a statement constitutes dicta when it is "unnecessary to the decision in the case" (quoting Black's Law Dictionary (8th ed. 2004), abrogated on other grounds by Hertz Corp. v. Friend, 559 U.S. 77, 92-93 (2010)); see also Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 161 (2010) ("Courts—including this court—have sometimes mischaracterized claim-processing rules or elements of a cause of action as jurisdictional limitations, particularly when that characterization was not central to the case, and thus did not require close analysis.").

the Government to exclude a given alien"). While the doctrine is founded upon constitutional considerations and interpretation of the Immigration and Nationality Act ("INA"), see Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d 1, 12 (D.D.C. 2022), it is nonetheless a judicially-created doctrine, see Allen v. Milas, 896 F.3d 1094, 1101 (9th Cir. 2018).

The First Circuit is not the first court to have discussed consular nonreviewability as though application of the doctrine deprives the court of jurisdiction. Indeed, the doctrine traces its roots to the "infamous" Chinese Exclusion Case. Donald S. Dobkin, Challenging the Doctrine of Consular Nonreviewability in Immigration Cases, 24 Geo. Immigr. L.J. 113, 116 (2010). That case's holding is understood to be sweeping. See Chae Chan Ping v. United States (The Chinese Exclusion Case), 130 U.S. 581, 609 (1889); Kleindienst v. Mandel, 408 U.S. 753, 765 (1972) (characterizing the Chinese Exclusion Case as having held "that the power to exclude aliens is inherent in sovereignty, necessary for maintaining normal international relations and defending the country against foreign encroachments and dangers—a power to be exercised exclusively by the political branches of government" (quotation omitted)).

There is, however, a growing consensus among the Courts of Appeals that, despite statements in the caselaw suggesting that the doctrine is jurisdictional in nature, consular nonreviewability is in reality a merits issue. See Del Valle v. Sec'y of State, 16 F.4th 832, 838 (11th Cir. 2021) ("[W]hen the doctrine of consular non-reviewability bars review of a consular official's decision, a district court should

dismiss a suit challenging the decision under Rule 12(b)(6).”); Baan Rao Thai Rest. v. Pompeo, 985 F.3d 1020, 1027 (D.C. Cir. 2021) (“Dismissal based on consular nonreviewability . . . is a merits disposition under Federal Rule of Civil Procedure 12(b)(6).”); Allen, 896 F.3d at 1101 (“The doctrine of consular nonreviewability, which is judicial in origin, is surely informed by our respect for the separation of powers, but it is not, for that reason, a constraint on our subject matter jurisdiction; our deference goes to our willingness, not our power, to hear these cases.” (emphasis omitted)); Matushkina v. Nielsen, 877 F.3d 289, 294 n.2 (7th Cir. 2017) (“We treat the doctrine of consular nonreviewability as a matter of a case's merits rather than the federal court's subject matter jurisdiction.”); Am. Acad. of Religion v. Napolitano, 573 F.3d 115, 123 (2d Cir. 2009) (noting that “the term ‘jurisdiction’ is often used imprecisely,” and finding that traditional subject matter jurisdiction existed despite applicability of consular nonreviewability). Many of these cases reason that, because only Congress may determine the federal courts' jurisdiction, see Kontrick v. Ryan, 540 U.S. 443, 452 (2004), the doctrine of consular nonreviewability—which is a judicial creation—by definition cannot limit a court's Article III jurisdiction. See, e.g., Del Valle, 16 F.4th at 838.

Guidance on this issue is found in the recent case of Trump v. Hawaii, 138 S. Ct. 2392, 2407 (2018). In that case, the government asserted consular nonreviewability as a defense but did “not argue that the doctrine . . . goes to the Court's jurisdiction.” 138 S. Ct. at 2407. The Supreme Court stated that it would “assume without deciding that plaintiffs' statutory claims are reviewable,

notwithstanding consular nonreviewability." Id. However, as the Court of Appeals for the District of Columbia Circuit explained in Baan Rao Thai Restaurant, "[h]ad the doctrine been jurisdictional, the Court would have had to consider the doctrine to ensure its jurisdiction." Baan Rao, 985 F.3d at 1028 (emphasis added); see also Citizens for a Better Env't, 523 U.S. at 94-95; Avullija v. Sec'y of State, 839 Fed. App'x 292, 295 (11th Cir. 2020) ("Although the [Trump v. Hawaii] Court did not expressly state that the doctrine of consular nonreviewability is not an aspect of subject matter jurisdiction, its merits analysis is strong support for the conclusion that the doctrine poses no jurisdictional bar.").

For these reasons, the court concludes that the doctrine of consular nonreviewability does not implicate subject-matter jurisdiction. The court will therefore honor defendants' request to analyze their consular nonreviewability challenge under Rule 12(b)(6).[2]

Under that rule, the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A.,

---

[2] With respect to defendants' standing challenge, the defendants do not challenge the accuracy of the jurisdictional facts alleged in the complaint to support standing; they merely argue that Raouf has failed to show that the Secretary of State is empowered to grant the relief she seeks. When a jurisdictional motion to dismiss challenges only the sufficiency of the facts relied upon the complaint to support jurisdiction, the standard of review is the same as the Rule 12(b)(6) standard. See Sevigny v. United States, Civ. No. 13-cv-401-PB, 2014 WL 3573566, at *2-3 (D.N.H. July 21, 2014); Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).

772 F.3d 63, 68, 71 (1st Cir. 2014) (quotation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Ordinarily, the court is "forbidden" from considering documents that are not attached to the complaint, or expressly incorporated therein, in ruling on a motion to dismiss pursuant to Rule 12(b)(6). Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). "However, courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff's claim; or for documents sufficiently referred to in the complaint." Id.

Here, defendants attach a declaration prepared by an employee with the Office of the Assistant Legal Adviser for Consular Affairs to their motion to dismiss. See doc. no. 10-2. Defendants' arguments for dismissal rely in part on factual information contained in this declaration. However, defendants have not established that consideration of this declaration is appropriate at this juncture. The declaration is not a public record; it is not central to Raouf's claim; it is nowhere referred to in Raouf's complaint; and Raouf does not concede the declaration's authenticity. Therefore, the court will limit its analysis to the well-pleaded allegations in Raouf's complaint.[3]

---

[3] For these same reasons, the court declines to consider the affidavit Raouf attached to her objection to defendant's motion to dismiss. See doc. no. 11-1.

## BACKGROUND

The court will begin its discussion with a brief summary of relevant law applicable to visa applications. Then, the court will recite the relevant factual allegations in plaintiff's complaint before summarizing this case's procedural posture and the defendants' motion to dismiss.

Generally speaking, "an alien may not enter and permanently reside in the United States without a visa." Kerry v. Din, 576 U.S. 86, 89 (2015) (plurality opinion) (citing 8 U.S.C. § 1181(a)). However, "[t]he INA creates a special visa-application process for aliens sponsored by 'immediate relatives' in the United States." Id. (quoting 8 U.S.C. §§ 1151(b), 1153(a)). "Under this process, the citizen-relative first files a petition on behalf of the alien living abroad, asking to have the alien classified as an immediate relative." Id. "If and when a petition is approved, the alien may apply for a visa by submitting the required documents and appearing at a United States Embassy or consulate for an interview with a consular officer." Id.

Raouf is a United States citizen residing in New Hampshire. Raouf's spouse, Abdullah A. Al Sammarraie, is an Iraqi citizen residing in the United Arab Emirates. Raouf filed a petition with United States Citizenship and Immigration Services ("USCIS") on April 6, 2020, asking to have Al Sammarraie classified as her immediate relative. USCIS approved her petition on September 17, 2020. USCIS then submitted Raouf's petition to the National Visa Center ("NVC"), an arm of the State Department, for further processing. NVC subsequently forwarded Raouf's petition to the U.S. Embassy in Abu Dhabi, United Arab Emirates.

The Embassy scheduled Al Sammarraie's visa interview for August 23, 2022. Al Sammarraie attended the interview and applied for a visa. Raouf alleges that, since that time, "the agency has refused to issue a decision on this case," despite her numerous attempts to contact the Embassy and obtain a decision. Doc. no. 1 ¶¶ 17-18.

Raouf alleges that the Department of Homeland Security "has a policy, known as the 'Controlled Application Review and Resolution Program' (hereinafter sometimes referred to as 'the CARRP') that intentionally delays the applications of applicants such as Abdullah A. Al Sammarraie due to security concerns." Id. ¶ 24. She further alleges that, defendants have used CARRP since 2008 "to investigate and adjudicate applications deemed to present potential 'national security concerns.'" Id. ¶ 27. While Raouf did not attach any materials pertaining to CARRP to her complaint, she alleges that the program's "definition of 'national security concern' is far more expansive than the security-related ineligibility criteria for immigration applications set forth by Congress in the INA." Id. ¶ 28. She contends that CARRP's definition—which has neither been approved by Congress nor subject to notice and comment—is based on "deeply flawed and expansive government watchlists, and other vague and overbroad criteria that bear little, if any, relation to the security-related statutory ineligibility criteria" set forth in the INA. Id. ¶¶ 27-28. Raouf ultimately contends, "[o]n information and belief," that defendants "are intentionally delaying a response . . . in regard to Abdullah A. Al Sammarraie's visa application pursuant to the CARRP program." Id. ¶ 25.

Raouf filed the instant complaint in this court on or about June 6, 2023. She brings two claims. Her first claim is brought under the APA in conjunction with the Mandamus Act. The APA requires agencies to conclude matters "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." 5 U.S.C. § 555(b). Raouf contends that this statute "creates a non-discretionary duty to conclude agency matters," a violation of which is itself is "a sufficient basis for mandamus relief." Doc. no. 1 ¶ 20 (citing Litton Microwave Cooking Prods. v. NLRB, 949 F.2d 249, 253 (8th Cir. 1991)). Moreover, the APA provides that a court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Raouf alleges that defendants' unreasonable delay in issuing a final adjudication with respect to Al Sammarraie's visa application violates 5 U.S.C. § 555(b), entitling her to mandamus relief.

Raouf's second claim alleges that the defendants' delay has violated her due process rights. She asserts that "[t]he right to fundamental fairness in administrative adjudication[s] is protected by the Due Process Clause," and that she "may seek redress in this Court for Defendants' combined failures to provide a reasonable and just framework of adjudication in accordance with applicable law." Doc. no. 1 ¶ 35. She further alleges that the defendants' delay and failure to act "has irrevocably harmed [her] by causing a loss of consortium between Plaintiff and . . . Al Sammarraie, among other ways." Id. ¶ 37.

Defendants have filed a motion to dismiss. Doc. no. 10. They make four primary arguments. First, they argue that the Secretary of State must be dismissed

because he lacks authority to grant Raouf the relief she seeks. Second, defendants argue that Raouf's claims are barred by the doctrine of consular nonreviewability. Third, they argue that Raouf has failed to state an unreasonable delay claim because she has not identified a clear nondiscretionary duty to act nor sufficiently alleged an unreasonable delay. Finally, they argue that Raouf has failed to sufficiently allege a due process claim. The court will consider each of the defendants' argument in turn.

## DISCUSSION

I.     Raouf Has Standing to Pursue Relief Against the Secretary of State

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157 (2014) (quoting U.S. Const. art. III, § 2). "The doctrine of standing gives meaning to these constitutional limitations by 'identifying those disputes which are appropriately resolved through the judicial process.'" Id. (footnote and brackets omitted) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). "To establish Article III standing, a plaintiff must show '(1) [she] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" Petrello v. City of Manchester, Civ. No. 16-cv-008-LM, 2017 WL 3972477, at *16 (D.N.H. Sept. 7, 2017) (quoting Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000)). The

plaintiff has the burden of demonstrating standing "with respect to each defendant." Sierra Club, 2019 WL 8407255, at *4.

Here, defendants assert that the Secretary of State is not a proper defendant to this action because he lacks authority to grant Raouf the relief she seeks. In other words, defendants argue that Raouf lacks standing to pursue her claims against the Secretary of State because the Secretary cannot redress her complained-of injuries. In support of their argument, defendants cite Ninth Circuit caselaw wherein that Court of Appeals recognized that the INA "specifically exempted" the authority to issue or withhold visas from the Secretary of State. Li Hing of Hong Kong, Inc. v. Levin, 800 F.2d 970, 971 (9th Cir. 1986) (citing 8 U.S.C. § 1104(a)). Raouf counters that she is not asking the Secretary of State to issue Al Sammarraie a visa; rather, she is merely asking that he perform "his duty under the Administrative Procedure[] Act to adjudicate the petition in a timely manner." Doc. no. 11 at 8. Raouf distinguishes Li Hing on this basis, noting that the Ninth Circuit was there asked to enjoin the denial of a visa application. See Li Hing, 800 F.2d at 970.

The court agrees with Raouf that the Secretary of State is a proper party at this juncture. The INA provides that "[t]he Secretary of State shall be charged with the administration and the enforcement of the provisions of this chapter and all other immigration and nationality laws relating to . . . the powers duties, and functions of diplomatic and consular officers of the United States." 8 U.S.C. § 1104(a). While this same statute exempts from the Secretary's authority "those powers, duties, and functions conferred upon the consular officers relating to the

granting or refusal of visas," id., Raouf has not alleged that defendants have refused to grant Al Sammarraie's visa. Rather, she alleges that defendants have simply failed to make a decision with respect to Al Sammarraie's visa, and the court is required to assume the truth of that allegation at this early stage. Raouf asks not for the Secretary of State to grant Al Sammarraie a visa; she asks only that he carry out his agency's duty to issue a timely adjudication of the visa application at issue.

"Control over a consular officer's visa determinations—that is, her decisions to grant, deny, or revoke immigrant and non-immigrant visas—is not the same as control over the timing by which the consular officer considers the applications presented to her." Al-Gharawy, 617 F. Supp. 3d at 10 (quotation, brackets, ellipses, and citation omitted). While the Secretary is barred "from directing a particular outcome with respect to . . . visa adjudications," he is not barred "from directing consular officers 'to conclude . . . matter[s] presented to [them]' 'within a reasonable time.'" Id. (quoting 5 U.S.C. § 555(b)). Because the Secretary has authority to direct consular officials to adjudicate particular visa applications, the court denies the motion to dismiss with respect to the Secretary of State.

II.     Consular Nonreviewability Does Not Compel Dismissal of Raouf's Claims

As noted, the consular nonreviewability doctrine provides that, as a general matter, courts may not review a decision to exclude a particular alien. See Chiang, 582 F.3d at 242; Shaughnessy, 338 U.S. at 543. There are two primary exceptions to the doctrine. The first exception allows for judicial review of a claim that the

challenged decision "infringes the constitutional rights of a citizen of the United States," although this form of review asks only whether there was a "facially legitimate and bona fide reason" for the allegedly unconstitutional action. Samandar v. Blinken, 599 F. Supp. 3d 28, 29 (D. Mass. 2022) (quoting Mandel, 408 U.S. at 770).

The second exception allows for judicial review of claims alleging that a "consular officer[] fail[ed] to follow nondiscretionary regulatory duties," i.e., where the plaintiff seeks to compel an immigration official to take an action he or she is already required by law to take. Ruston v. U.S. Dep't of State, 29 F. Supp. 2d 518, 523 (E.D. Ark. 1998), summarily aff'd, 187 F.3d 643 (8th Cir. 1999); see Al-Gharawy, 617 F. Supp. 3d at 11-13 (identifying a "long line of decisions" holding that consular nonreviewability "does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision" because the INA does not give immigration officials "discretion [to] indefinitely . . . delay a decision on a visa application"); Patel v. Reno, 134 F.3d 929, 931-32 (9th Cir. 1997) (holding that court had authority to review consular official's decision to "suspend" a visa application, which was not "a decision within the discretion of the consul").

Defendants do not appear to dispute that consular officers are required by law to act on visa petitions. See 22 C.F.R. § 42.81 (providing that, when faced with a properly completed visa application, "the consular officer must issue the visa, refuse the visa . . . , or . . . discontinue granting the visa"). Rather, they argue that the

consular officer has already acted. Defendants contend that the Embassy has issued a final decision to "refuse," or deny, Al Sammarraie's visa application pursuant to 8 U.S.C. § 1201(g). They contend, therefore, that any relief ordered by the court would compel the defendants to exercise their discretion to "re-adjudicate" Raouf's spousal visa petition—which, defendants assert, the doctrine of consular nonreviewability bars the court from doing. See 8 U.S.C. § 1201(g) (setting forth bases upon which a consular officer may deny a visa application).

However, defendants' argument relies upon the factual premise that Al Sammarraie's application has already been "refused" pursuant to 8 U.S.C. § 1201(g). Raouf does not allege in her complaint that Al Sammarraie's application has been refused; rather, she alleges that defendants have failed to act on his application. Doc. no. 1 ¶ 17. Defendants' assertion that Al Sammarraie's application has already been refused is drawn from the declaration that defendants attached to their motion to dismiss, which the court has already determined is inappropriate to consider in evaluating this motion brought under Rule 12(b)(6). At this stage, the court is required to assume the truth of Raouf's allegation that defendants have not yet issued a decision on Al Sammarraie's visa. Given that defendants do not appear to argue that consular officers lack a nondiscretionary duty to act on visa applications, the court rejects defendants' argument for dismissal on the basis of consular nonreviewability.[4]

_____

[4] Defendants may renew their consular nonreviewability argument at summary judgment.

III.    <u>Raouf Adequately States an Unreasonable Delay Claim</u>

Defendants next move to dismiss Raouf's unreasonable delay claim. To state an unreasonable delay claim under the APA, the plaintiff must plausibly allege (1) that defendants failed to take an action that they are required by law to take, Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004), and (2) defendants' delay in taking this action was unreasonable, Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023).[5] Defendants attack Raouf's showing on both prongs.

With respect to the first prong, defendants' argument mirrors their consular nonreviewability argument (i.e., Al Sammarraie's visa application has been refused pursuant to 8 U.S.C. § 1201(g)). The court rejects this argument for the same reason it rejected defendants' consular nonreviewability argument.

With respect to the second prong, defendants argue that Raouf has failed to plausibly allege that any delay in this case has been unreasonable. Unreasonable delay claims are usually evaluated under the nonexclusive six-factor balancing test set forth in Telecommunications Research and Action Center v. F.C.C., 750 F.2d 70, 80 (D.C. Cir. 1984) ("<u>TRAC</u>"). See Towns of Wellesley, Concord, and Norwood, Mass.

---

[5] Raouf's request for mandamus relief does not meaningfully alter what she must allege to adequately state an unreasonable delay claim. See Kinuthia v. Biden, Civ. No. 21-11684-NMG, 2022 WL 17653503, at *4 n.7 (D. Mass. Nov. 9, 2022) (noting that, "where agency action has allegedly been unreasonably delayed, courts recognize that a mandamus claim is, effectively, an APA one"); Al-Gharawy, 617 F. Supp. 3d at 17 (noting that the standards for obtaining relief under the APA and the Mandamus Act on an unreasonable delay claim are "essentially the same" (quoting Vietnam Veterans of Am. v. Shinseki, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010))); In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008) (explaining that, to obtain relief on an unreasonable delay claim, plaintiff must show that issuance of writ of mandamus would be justified).

v. FERC, 829 F.2d 275, 277 (1st Cir. 1987); V.U.C. v. U.S. Citizenship and Immigr.

Servs., 557 F. Supp. 3d 218, 223 (D. Mass. 2021). Under this test, the court

considers the following:

> (1) the time agencies take to make decisions must be governed by a
> rule of reason; (2) where Congress has provided a timetable or other
> indication of the speed with which it expects the agency to proceed in
> the enabling statute, that statutory scheme may supply content for
> this rule of reason; (3) delays that might be reasonable in the sphere of
> economic regulation are less tolerable when human health and welfare
> are at stake; (4) the court should consider the effect of expediting
> delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the
> interests prejudiced by delay; and (6) the court need not find any
> impropriety lurking behind agency lassitude in order to hold that
> agency action is unreasonably delayed.

TRAC, 750 F.2d at 80 (citations and quotations omitted).

As the recitation of these factors demonstrates, "addressing an unreasonable

delay claim is 'ordinarily a complicated and nuanced task requiring consideration of

the particular facts and circumstances before the court.'" Al-Gharawy, 617 F. Supp.

3d at 17 (quoting Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d

1094, 1100 (D.C. Cir. 2003)); see also Anversa v. Partners Healthcare Sys., Inc., 835

F.3d 167, 178 (1st Cir. 2016) ("[D]etermining whether a timeframe for agency action

is unreasonable involves more than a matter of simple arithmetic."). "Because an

analysis of the TRAC factors typically requires the court to wade through the

particular facts and circumstances of an agency's delay, courts generally conclude

that 'undertaking such a fact-bound analysis at the motion to dismiss stage is

premature.'" Al-Gharawy, 617 F. Supp 3d at 17-18 (brackets omitted) (quoting

Thomas v. Pompeo, 438 F. Supp. 3d 35, 44 n.6 (D.D.C. 2020)); see, e.g., Roe v.

Mayorkas, Civ. No. 22-cv-10808-ADB, 2023 WL 3466327, at *17 (D. Mass. May 12, 2023); Litvin v. Chertoff, 586 F. Supp. 2d 9, 12 (D. Mass. 2008).

Defendants resist this notion and assert that a motion to dismiss is a proper vehicle to challenge Raouf's unreasonable delay claim. In support, they cite the District of Columbia Circuit's recent opinion in Da Costa v. Immigration Investor Program Office, 80 F.4th 330 (D.C. Cir. 2023). There, the Court of Appeals affirmed the dismissal of unreasonable delay claims challenging USCIS's failure to act on plaintiffs' petitions for classification as "approved investors" in certain job-creating enterprises, the approval of which would make petitioners eligible to apply for lawful permanent resident status. Da Costa, 80 F.4th at 334-36, 338. The Da Costa court explained at length USCIS's "availability-screened queue" procedure for processing petitions such as plaintiffs'. See id. at 336-37. Under that procedure, USCIS conducts initial screens of petitions for approved investor status to determine whether the petitioner hails from a country for which visas remain available for issuance. See id.; see also 8 U.S.C. § 1152(a)(2) (capping available visas in a given year by country). Once this initial screen is complete, USCIS processes petitions on a "first-in, first-out" basis, meaning that priority is given to petitions that have been waiting the longest. Da Costa, 80 F.4th at 337.

In affirming the district court's dismissal, the Court of Appeals emphasized the "rule of reason" apparent in USCIS's procedure for handling petitions such as plaintiffs'. See id. at 340-41; see also TRAC, 750 F.2d at 80 (first factor to consider is whether delay is "governed by a rule of reason" (quotation omitted)). By instituting

its availability-screened queue, USCIS responded to concerns that a simple first-in, first-out processing format led to the prioritization of petitions from countries which had already reached their yearly visa cap, such that, in many instances, processing priority was being given to applicants for whom it was clear no visa would be issued. See Da Costa, 80 F.4th at 336-37, 340. And, perhaps more critically, plaintiffs conceded that this process was sensible, i.e., that it was governed by a "rule of reason." See id. at 341-42.

In short, the District of Columbia Circuit had the benefit of a developed record (and a critical concession) on a key TRAC factor at the motion to dismiss stage that is absent in this case. See Core Commc'ns., 531 F.3d at 855 (explaining that the first TRAC factor is the "most important factor"). Here, defendants have failed to articulate a clear "rule of reason" that would justify the alleged delay in adjudicating Raouf's spousal visa petition. In asserting that the first TRAC factor weighs in their favor—a factor which was critical to the Court of Appeals' reasoning in Da Costa—defendants merely argue that the length of the delay in this case is not unreasonable as a matter of law, without pointing to agency constraints or procedures that could justify the delay.[6] See Xiaobing Liu v. Blinken, 544 F. Supp. 3d 1, 11 (D.D.C. 2021) ("Defendants must show an identifiable rationale governing

---

[6] Defendants assert that the length of the delay in this case should be calculated from the most recent government action on the visa application, which, defendants contend, was shortly after Al Sammarraie's interview in 2022. By contrast, Raouf contends that the delay should be calculated from the time she submitted her application to have Al Sammarraie classified as her spouse. Because the court does not reach the merits of Raouf's unreasonable delay claim, it does not resolve this dispute.

their decisions." (quotation omitted)). But "[w]hether a 'rule of reason' exists for agency action 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.'" Tate v. Pompeo, 513 F. Supp. 3d 132, 148 (D.D.C. 2021) (quoting Mashpee Wampanoag, 336 F.3d at 1102).

Here, Raouf alleges that she submitted a spousal visa petition on April 6, 2020, and that the Embassy interviewed Al Sammarraie on August 23, 2022, but that no decision with respect to Al Sammarraie's visa has yet been made. Moreover, Raouf alleges that this delay is attributable to the CARRP program, which she claims to be an ultra vires internal policy for intentionally delaying issuance of visas. Raouf's allegations are sufficient to withstand a motion to dismiss her unreasonable delay claim when considered against the complex, fact-laden inquiry that analysis of such a claim will involve. See, e.g., Mayorkas, 2023 WL 3466327, at *17; Litvin, 586 F. Supp. 2d at 12. The court therefore denies defendants' motion to dismiss with respect to Raouf's unreasonable delay claim.

IV.    Raouf Fails to State a Due Process Claim

Finally, defendants move to dismiss Raouf's due process claim, arguing that she has failed to plead facts upon which relief could be granted. The precise contours of Raouf's due process claim are opaque. Based on the complaint alone, it is difficult to determine whether she alleges a violation of her procedural or

substantive due process right. However, Raouf's objection clarifies that she intends to bring a procedural due process claim, and that she alleges she has a protected interest in her spouse's visa application which has been afforded insufficient procedural protections by defendants.

"A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." Reed v. Goertz, 598 U.S. 230, 236 (2023). With respect to the first element, in Kerry v. Din, a plurality of the Supreme Court rejected the claim that a U.S. citizen has a protected liberty or property interest in a spousal visa application. 576 U.S. at 88, 101. While this conclusion does not carry the weight of binding precedent,[7] see Rohrbaugh v. Pompeo, 394 F. Supp. 3d 128, 133 n.3 (D.D.C. 2019), "some lower courts have likewise concluded [that] a U.S. citizen has no liberty interest in a spouse's visa application," Aslam v. U.S. Dep't of State, No. 2:22-cv-701, 2023 WL 6163969, at *14 & n.166 (D. Utah Sept. 21, 2023) (collecting cases); see, e.g., Rohrbaugh, 394 F. Supp. 3d at 133 (highlighting that "numerous

---

[7] Justice Scalia, writing for himself, Chief Justice Roberts, and Justice Thomas, concluded that no protected interest is implicated in this scenario. Din, 576 U.S. at 87-88. 101. In their concurrence in the judgment, Justice Kennedy and Justice Alito assumed without deciding that the plaintiff was deprived of a protected interest but found that the State's deprivation of that interest comported with due process. Id. at 101-02. Four justices dissented, arguing that the plaintiff was deprived of a protected interest without sufficient process. Id. at 106-07. Because "[n]one of the reasonings supporting the three opinions in Din are logical subsets of another, . . . 'there is no controlling opinion' and the 'precedent is to be read only for its persuasive force.'" Rohrbaugh, 394 F. Supp. 3d at 133 n.3 (quoting United States v. Epps, 707 F.3d 337, 349 (D.C. Cir. 2013)); accord Ali v. United States, 849 F.3d 510, 515 n.3 (1st Cir. 2017).

courts in this district have ruled that a U.S. citizen has no constitutional right which is violated by the denial of a spouse's visa application"). The Ninth Circuit has reached a contrary conclusion. See Bustamante v. Mukasey, 531 F.3d 1059, 1062 (9th Cir. 2008) (holding that a U.S. citizen has a protected liberty interest in the adjudication of a noncitizen spouse's visa application); Muñoz v. U.S. Dep't of State, 50 F.4th 906, 915-16 (9th Cir. 2022) (affirming Bustamante's vitality post-Din).

The First Circuit has left open the question of whether a U.S. citizen has a cognizable due process interest in the procurement of a visa for a noncitizen spouse. See Ali v. United States, 849 F.3d 510, 515 & n.3 (1st Cir. 2017). But cf. Silverman v. Rogers, 437 F.2d 102, 107 (1st Cir. 1970) (rejecting argument that deportation of noncitizen spouse would deprive citizen spouse "of [his] constitutional rights"). However, "[t]he Supreme Court has explained that '[t]o have a [protected] interest in a benefit, a person clearly must have more than an abstract need or desire and more than [a] unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" Doe v. UMass-Amherst, --- F. Supp. 3d ---, 2023 WL 7195857, at *26 (D. Mass. Nov. 1, 2023) (quoting Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005)); accord Ky. Dep't of Corr v. Thompson, 490 U.S. 454, 460 (1989). "Thus, 'a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.'" UMass-Amherst, 2023 WL 7195857, at *26 (quoting Town of Castle Rock, 545 U.S. at 756). "A reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the

entitlement is couched in mandatory terms." Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz., 24 F.3d 56, 62 (9th Cir. 1994) (quoting Ass'n of Orange Cnty. Deputy Sheriffs v. Gates, 716 F.2d 733, 734 (9th Cir. 1983)); see also Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972) ("Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .").

Here, Raouf lacks a legitimate claim of entitlement to the issuance of a visa to her noncitizen spouse. The INA grants consular officials wide discretion in granting or denying visas. For example, the INA provides that, "a consular official may issue" a visa "to an immigrant who has made proper application therefor." 8 U.S.C. § 1201(a)(1)(A) (emphasis added). Courts have interpreted this provision as permitting consular officials to deny even properly submitted visa applications. See, e.g., Al-Gharawy, 617 F. Supp. 3d at 12; see also Saavedra Bruno v. Albright, 197 F.3d 1153, 1158 n.2 (D.C. Cir. 1999) ("Consular officers have complete discretion over issuance and revocation of visas."). Consular officers' discretionary decisions to grant or deny visa applications are immunized from review by even the Secretary of State. 8 U.S.C. § 1104(a). Moreover, "[a]fter the issuance of a visa or other documentation to any alien, the consular officer . . . may at any time, in his discretion, revoke such visa or other documentation." 8 U.S.C. § 1201(i); accord 22 C.F.R. § 41.122(a). Given immigration officials' wide discretion over the substantive decision to grant, deny, or revoke a visa, Raouf fails to plausibly alleged facts showing a legitimate claim of entitlement to the issuance of a spousal visa.

Raouf's arguments in support of her position rely upon the Ninth Circuit's opinion in Ching v. Mayorkas, 725 F.3d 1149 (9th Cir. 2013). However, Ching concerned a claim of entitlement to having one's noncitizen spouse classified as an "immediate relative"; the plaintiffs in that case did not claim an entitlement to a visa. Ching, 725 F.3d at 1155-56 (emphasis added). Immigration officials retain discretion to grant, refuse, or revoke spousal visas even after a noncitizen has been classified as a U.S. citizen's immediate relative. See Saavedra Bruno, 197 F.3d at 1158 n.2; Din, 576 U.S. at 89. Here, Raouf alleges that her application for classification of Al Sammarraie as her immediate relative has already been approved by USCIS. To the extent she has a legitimate claim of entitlement to classification of Al Sammarraie as her immediate relative, that entitlement has already been afforded to her. Nor does Raouf contend that USCIS's actions in classifying Al Sammarraie as her spouse failed to comport with due process— indeed, she has not named USCIS as a party to this action. Therefore, Raouf's reliance on Ching is misplaced.

For the foregoing reasons, Raouf fails to plausibly allege facts in support of her due process claim, and the court grants defendants' motion to dismiss with respect to that claim.

## CONCLUSION

Defendants' motion to dismiss (doc. no. 10) is granted in part and denied in part. It is granted with respect to Raouf's due process claim (Count II). It is denied in all other respects.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

November 20, 2023

cc:  Counsel of Record.